**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>SHERRY A. BEARD,<br><br>Debtor. | : CHAPTER 13<br>:<br>: Case No. 21-13349 (PMM)<br>: |

**ORDER AUTHORIZING DEBTOR TO RETAIN PATTERSON-SCHWARTZ-**
**GREENVILLE AS LISTING AGENT/ BROKER PURSUANT TO**
**UNITED STATES BANKRUPTCY CODE § 327 AND BANKRUPTCY RULE 2014**

On this _____ day of _____, 2022, upon consideration of Debtor's Application to Retain Patterson-Schwartz-Greenville as Listing Agent/Broker Pursuant to 11 U.S.C. § 327 and Bankruptcy Rule 2014 ("Application"), the Court having concluded that the retention of Patterson-Schwartz-Greenville ("Patterson") as Listing Agent/Broker is necessary and is in the best interest of Debtor, the Court being satisfied that Patterson represents no interest adverse to Debtor's estate with respect to matters as to which it is to be engaged, that Patterson is disinterested under 11 U.S.C. §§ 101 and 327, and sufficient cause appearing therefore, it is

**ORDERED and DECREED** that the Application is **APPROVED**, and Debtor is hereby authorized to retain Patterson-Schwartz-Greenville as Listing Agent/Broker pursuant to the terms of the Agency Agreement (as defined in the Application) attached to and incorporated in the Application, and to receive such compensation as is approved by this Court upon application and notice of opportunity for hearing.

BY THE COURT:

_____
Patricia M. Mayer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: : | |
| : | CHAPTER 13 |
| SHERRY A. BEARD, : | |
| : | Case No. 21-13349 (PMM) |
| Debtor. : | |

**DEBTOR'S APPLICATION TO RETAIN PATTERSON-SCHWARTZ-GREENVILLE**
**AS LISTING AGENT/BROKER PURSUANT TO**
<u>**UNITED STATES BANKRUPTCY CODE § 327 AND BANKRUPTCY RULE 2014**</u>

Sherry A. Beard ("Debtor"), by and through her undersigned counsel, hereby submits this Application to Retain Patterson-Schwartz-Greenville ("Patterson") as Listing Agent/Broker Pursuant to 11 U.S.C. § 327 and Bankruptcy Rule 2014, and in support thereof, Debtor respectfully avers as follows:

1. Debtor filed a voluntary petition for relief under chapter 13 on December 21, 2021 ("Petition Date").

2. Debtor seeks to retain Patterson as its proposed Listing Agent/Broker to market and sell Debtor's real property located at 740 Meadowbrook Drive, Valley, PA 19320 ("Debtor's Real Property"). A true and correct copy of the Exclusive Agency Agreement setting forth the terms and conditions pursuant to which Patterson has agreed to be engaged (collectively, "Agency Agreement") is attached hereto and incorporated herein by reference as Exhibit "A."

3. Pursuant to the Agency Agreement, Patterson proposes a commission on the sale of any or all of Debtor's Real Property of five percent (5%) of the purchase price. To the best knowledge of Debtor, the commission sought by Patterson is fair and customary for the services to be provided.

4. Patterson's services in connection with the marketing and sale of Debtor's Real Property are necessary given the agent/brokers' relevant knowledge of the area in which Debtor's Property is located, and the professional expertise and experience of Patterson's sales agents.

5. Patterson has indicated that it will be able and willing to perform these services for the above compensation, subject to application to, and approval of, this Court. Debtor contemplates seeking Court approval for, and payment of, Patterson's commission(s) at the closing on a sale of Debtor's Real Property in conjunction with a motion to sell any or all of Debtor's Real Property in accordance with 11 U.S.C. §§ 363 and 330 and/or pursuant to the terms of Debtor's Amended Plan of Reorganization.

6. Except as may be set forth in the attached Verified Statement, Patterson does not believe that it represents any interest adverse to Debtor, Debtor's estate, Debtor's creditors, or any party in interest to this case in the matters for which it is to be retained by Debtor, and its retention is in the best interest of the estate.

WHEREFORE, Debtor respectfully requests authorization to retain Patterson- Schwartz- Greenville to render services in accordance with this Application, with compensation paid as an administrative expense in such amounts as the Court may hereafter determine and allow.

Dated: December 9, 2022                                       Respectfully submitted,

                                                              */s/ LEE M. HERMAN*
                                                              Lee M. Herman, Esquire
                                                              280 N. Providence Road
                                                              Media, PA 19063
                                                              610-891-6500
                                                              lmh@lmhlaw.com
                                                              Counsel to Debtor

**EXHIBIT A**

**LISTING CONTRACT (SELLER AGENCY CONTRACT)** XLS
**EXCLUSIVE RIGHT TO SELL REAL ESTATE**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1 Broker (Company)  Patterson-Schwartz - Greenville
2
3 Company Address  3705 Kennett Pike, Wilmington, DE 19807
4
5 Company Phone  (302) 429-4500
6 Company Fax

Licensee(s) (Name)  Monica Bush
Direct Phone(s)  (302) 429-4500
Cell Phone(s)  3024206103
Fax
Email  mbush@psre.com

7 **SELLER**  Sherry Beard
8
9 **SELLER'S MAILING ADDRESS**
10
11 PHONE _____ FAX _____
12 E-MAIL  beardsherryb@gmail.com

13 Seller understands that this Listing Contract is between Broker and Seller.
14 Does Seller have a listing contract for this Property with another broker? ☐ Yes  ☑ No
15 If yes, explain:

16 1. **PROPERTY**  LISTED PRICE $ 374,900
17    Address  740 Meadowbrook Drive   ZIP 19320
18    Municipality (city, borough, township)  Valley
19    County  Chester   School District  Coatesville Area
20    Zoning  Residential
21    Present Use  Residential
22    Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date)
23    38-02-0129.3100

24 2. **STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
25    (A) No Association of REALTORS® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed and
26        agreed upon the term of this Contract.
27    (B) **Starting Date:** This Contract starts when signed by Broker and Seller, unless otherwise stated here: _____
28    (C) **Ending Date:** This Contract ends at 11:59 PM on  12/31/2023 . By law, the term of a listing contract may not exceed
29        one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automatically
30        364 days from the Starting Date of this Contract.

31 3. **DUAL AGENCY**
32    Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a
33    Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer and
34    Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer
35    and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that Broker is a
36    Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.

37 4. **DESIGNATED AGENCY**
38    Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests
39    of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40    ☐ **Designated Agency is not applicable.**

41 5. **BROKER'S FEE**
42    (A) No Association of REALTORS® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43        will pay Broker.
44    (B) Broker's Fee is  5   % of the sale price OR $_____, whichever is greater, AND $_____, paid
45        to Broker by Seller as follows:
46    1. $_____ of Broker's Fee is earned and due **(non-refundable)** at signing of this Listing Contract, pay-
47       able to Broker.

48  Broker/Licensee Initials: _____   XLS Page 1 of 7   Seller Initials: _____

**COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2022**
rev. 2/22; rel. 7/22

2. **Seller will pay** the balance of **Broker's Fee if:**
    a. **Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller,** OR
    b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR
    c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
    d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
    e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay from any money paid by the government, OR
    f. A sale occurs after the Ending Date of this Contract IF:
        (1) The sale occurs within __60__ days of the Ending Date, AND
        (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
        (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
(C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

**6. BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker _____ of/from deposit monies.

**7. COOPERATION WITH OTHER BROKERS**
Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay **from Broker's Fee** a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
(A) ☑ **Represents Seller (SUBAGENT).** Broker will pay __2.5%__ of/from the sale price.
(B) ☑ **Represents the buyer (BUYER'S AGENT).** Broker will pay __2.5%__ of/from the sale price. **A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.**
(C) ☑ **Does not represent either Seller or a buyer (TRANSACTION LICENSEE).** Broker will pay __2.5%__ of/from the sale price.

**8. DUTIES OF BROKER AND SELLER**
(A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.
(B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
(C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.
(D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
(E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Broker's written consent.

**9. BROKER'S SERVICE TO BUYER**
Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

**10. BROKER NOT RESPONSIBLE FOR DAMAGES**
Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

**11. DEPOSIT MONEY**
(A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.
(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
    1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

108   2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
109   Broker how to distribute some or all of the deposit monies.
110   3. According to the terms of a final order of court.
111   4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
112   deposit monies if there is a dispute between the parties that is not resolved.
113   (C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs
114   of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES

Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS

Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS

(A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or environmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
   1. is a possible danger to those living on the Property, or
   2. has a significant, adverse effect on the value of the Property.
   The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.
(B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
(C) If Seller fails to disclose known material defects and/or environmental hazards:
   1. Seller will not hold Broker or Licensee(s) responsible in any way;
   2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
   3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978

The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to housing built in 1978 or later.

## 16. HOME WARRANTIES

At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECORDINGS ON THE PROPERTY

(A) Seller understands that potential buyers viewing the Property may engage in photography, videography or videotelephony on the Property. Seller should remove any items of a personal nature Seller does not wish to have photographed or recorded, such as family photos, important or confidential paperwork (including any information relating to the listing or communications with Broker or Licensee) and all other personally identifiable information such as birthdates, social security numbers, telephone numbers, etc. Seller is responsible for providing this same notification to any occupants of the Property.
(B) Any person who intentionally intercepts oral communications by electronic or other means without the consent of all parties is guilty of a felony under Pennsylvania law. Seller understands that recording or transmitting audio may result in violation of state or federal wiretapping laws. **Seller hereby releases all BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them, and any PERSON, FIRM or CORPORATION who may be liable by or through them, from any claims, lawsuits and actions which may arise from any audio or video recordings occurring in or around the Property.**

Broker/Licensee Initials: _____          XLS Page 3 of 7          Seller Initials:_____

**18. RECOVERY FUND**

Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

**19. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA**

Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

**20. TRANSFER OF THIS CONTRACT**

(A) Seller agrees that Broker may transfer this Contract to another broker when:
　1. Broker stops doing business, OR
　2. Broker forms a new real estate business, OR
　3. Broker joins his business with another.
(B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements of this Contract with the new broker.

**21. NO OTHER CONTRACTS**

Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the Ending Date of this Contract.

**22. CONFLICT OF INTEREST**

It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.

**23. ENTIRE CONTRACT**

This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part of this Contract.

**24. CHANGES TO THIS CONTRACT**

All changes to this Contract must be in writing and signed by Broker and Seller.

**25. MARKETING OF PROPERTY**

(A) Multiple Listing Services (MLS)
　1. An MLS is a subscription service used by real estate licensees to market properties to other subscribers. If marketed in an MLS, Broker will make an offer of cooperating compensation to another participant who procures a buyer for the Property (See Paragraph 7). MLS marketing is governed by specific rules and policies, which may differ depending on the MLS used.
　2. Sellers have the right to decide whether their Property will be marketed in an MLS, but should understand that opting out of MLS marketing may restrict Broker's ability to market the Property in other ways.
　　☐ Broker **will not** use an MLS to advertise the Property. Seller understands and agrees that the listing may be reported to an MLS, but will not be marketed for sale via an MLS. Further, Seller understands and agrees that any and all public marketing of the Property through the use of other means such as yard signs, social media, and public-facing websites may be prohibited. Seller may be required to sign an additional waiver or release to comply with MLS rules and policies.
　　☑ Broker will use an MLS to advertise the Property to other real estate brokers and salespersons. Listing broker shall communicate to the MLS all of Seller's elections made below. Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in an MLS or advertising of the Property.
(B) Virtual Office Website (VOW) and Internet Data Exchange (IDX)
　1. Some brokers may use a VOW or IDX, which are governed by specific rules and policies. Sellers have the right to control some elements of how their property is displayed on a VOW and/or IDX website.
　2. Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
　　☑ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Seller's listing.
　　☑ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with the Seller's listing.
(C) Other
　1. Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____
　_____
　2. ☐ Seller does not want the listed Property to be displayed on the Internet.
　　☐ Seller does not want the address of the listed Property to be displayed on the Internet.
　3. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.

**Broker/Licensee Initials: _____**　　　　　XLS Page 4 of 7　　　　　**Seller Initials: _____**

(D) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.

(E) Other _____

## 26. PUBLICATION OF SALE PRICE

Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the Property.

## 27. COPYRIGHT

In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, worldwide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

## 28. FIXTURES AND PERSONAL PROPERTY

(A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. **Seller is encouraged to be specific when negotiating what items will be included or excluded in a sale.**

(B) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Also included: _____
_____

(C) The following items are not owned by Seller and may be subject to a lease or other financing agreement (e.g., solar panels, windmills, water treatment systems, propane tanks, and satellite dishes): _____
_____

(D) EXCLUDED fixtures and items: _____
_____

## 29. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____
_____

(B) Yearly Property Taxes $ _____ Property Assessed Value $ _____

(C) Is the property preferentially assessed (including a tax abatement)?  ☐ Yes   ☐ No
   If applicable, how many years remain? _____

(D) COA/HOA Name _____ COA/HOA Phone _____
   COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
   Please explain: _____

(E) COA/HOA Fees $ _____  ☐ Quarterly   ☐ Monthly   ☐ Yearly

(F) Municipality Assessments $ _____

## 30. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA)

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/buyer, as the withholding agent, may request that you complete a FIRPTA Affidavit regarding your status as a foreign person as defined by the Act. Seller agrees to comply, if applicable.

**Broker/Licensee Initials:** _____         XLS Page 5 of 7         **Seller Initials:** _____

**31. TITLE & POSSESSION**

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
☐ Oil ☐ Gas ☐ Mineral ☐ Other
If checked, please explain: _____
_____

(C) Seller has:
☐ First mortgage with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Second mortgage with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Home Equity line of credit with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) Seller has:
☐ Judgments $ _____   ☐ Past Due Municipal Assessment $ _____
☐ Past Due Property Taxes $ _____   ☐ Past Due COA/HOA Fees $ _____
☐ Federal Tax Liens $ _____   ☐ Past Due COA/HOA Assessments $ _____
☐ State Tax Liens $ _____
☐ Other: _____   $ _____

(E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

**32. BUYER FINANCING**

Seller will accept the following arrangements for buyer to pay for the Property:
☑ Cash    ☑ Conventional mortgage    ☑ FHA mortgage    ☑ VA mortgage
☐ Seller's Assist to buyer (if any) $ _____, or _____ %

**33. SPECIAL INSTRUCTIONS**

The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

**34. SPECIAL CLAUSES**

(A) The following are part of this Listing Contract if checked:
☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
☐ Single Agency Addendum (PAR Form SA)
☐ Consumer Services Fee Addendum (PAR Form CSF)
☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
☐ Short Sale Addendum (PAR Form SSL)
☐ _____
☐ _____

(B) Additional Terms:

Broker/Licensee Initials: _____          XLS Page 6 of 7          Seller Initials:_____

342 _____ Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

343 _____ Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a
344 timely manner, if required.

345 _____ Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in
346 a timely manner, if required.

347 Seller has read the entire Contract before signing. Seller must sign this Contract.

348 Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

349 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
350 of all parties, constitutes acceptance by the parties.

351 This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
352 together shall constitute one and the same Agreement of the Parties.

353 **NOTICE BEFORE SIGNING:  IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENN-**
354 **SYLVANIA REAL ESTATE ATTORNEY.**

355 **SELLER** _____  DATE _____

356 **SELLER** _____  DATE _____

357 **SELLER** _____  DATE _____

358 **BROKER (Company Name)** _____

359 **ACCEPTED ON BEHALF OF BROKER BY** _____  **D A T E** _____

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| | : CHAPTER 13 |
| SHERRY A. BEARD, | : |
| | : Case No. 21-13349 (PMM) |
| Debtor. | : |

**VERIFIED STATEMENT OF MONICA BUSH IN SUPPORT OF
DEBTOR'S APPLICATION TO RETAIN PATTERSON-SCHWARTZ-GREENVILLE
AS LISTING AGENT/BROKER PURSUANT TO § 327 OF THE
UNITED STATES BANKRUPTCY CODE AND BANKRUPTCY RULE 2014**

Monica Bush, on behalf of Patterson-Schwartz-Greenville, as the proposed Listing Agent/Broker for the marketing and sale of Debtor's real property located at 740 Meadowbrook Drive, Valley, PA 19320 ("Debtor's Real Property"), pursuant to Bankruptcy Rule 2014(a) respectfully represents:

1. Debtor filed a voluntary petition for relief under chapter 13 of the Code on December 21, 2021 ("Petition Date").

2. Debtor seeks to retain Patterson-Schwartz-Greenville ("Patterson") to act as its Listing Agent/Broker to market for sale of Debtor's Real Property.

3. To the best of my knowledge, Patterson has no connection with Debtor, Debtor's creditors or any other party in interest (or their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee), which would disqualify it from representing Debtor in this case. In conjunction with Debtor's application to retain Patterson ("Application"), the parties agreed to enter into an Exclusive Agency Agreement dated as of March 16, 2016. See the Exclusive Agency Agreement attached to the Application as Exhibit A.

4. To the best of my knowledge, Patterson (a) does not hold an interest adverse to Debtor's estate; (b) does not represent an interest adverse to Debtor's estate; (c) is a disinterested person under 11 U.S.C. § 101(14); and (d) does not represent or hold an interest adverse to Debtor or its estate with respect to the matter for which Patterson is to be retained under 11 U.S.C. § 327(e).

I, Monica Bush, on behalf of Patterson-Schwartz-Greenville, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: December 9, 2022

PATTERSON-SCHWARTZ-GREENVILLE

By: _____
Monica Bush

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | CHAPTER 13 |
| SHERRY A. BEARD, | : | |
| | : | Case No. 21-13349 (PMM) |
| Debtor. | : | |

**CERTIFICATE OF SERVICE**

It is hereby certified that on this 12th day of December 2022, I caused to be served a true and correct copy of the *DEBTOR'S APPLICATION TO RETAIN PATTERSON-SCHWARTZ-GREENVILLE AS LISTING AGENT/BROKER PURSUANT TO § 327 OF THE UNITED STATES BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 AND NOTICE OF APPLICATION* was served via electronic service upon all parties receiving notice through the Court's ECF system and via U.S. Mail Postage Prepaid upon the parties on the attached service list representing the Debtors, the Office of the United States Trustee and Clerk's Service List.

*/s/ Lee M. Herman*
Lee M. Herman, Esquire
Attorney for Debtor

# SERVICE LIST

*Via ECF:*

| | |
|---|---|
| Robert J. Lohr, II | bob@lohrandassociates.com, leslie@lohrandassociates.com; r59687@notify.bestcase.com |
| Andrew L. Spivack | andrew.spivack@brockandscott.com, wbecf@brockandscott.com |
| United States Trustee | USTPRegion03.PH.ECF@usdoj.gov |
| Kenneth E. West | ecfemails@ph13trustee.com, philaecf@gmail.com |

*Via US Mail:*

Sherry Beard
740 Meadowbrook Drive
Coatesville PA 19320

Diedre A. Agnew, Esq.
Law Offices of Deidra A. Agnew
1450 E Boot Rd Ste 400a
West Chester PA 19380-5963

Citadel Federal Credit Union
520 Eagleview Blvd
Exton PA 19341

Erika Petito
201 Horseshoe Lane
Coatesville PA 19320

Home Depot
PO Box 182120
Columbus OH 43218

Erika and Michael Jerminski
201 Horseshoe Lane
Coatesville PA 19320

Lively
PO Box 4428
Carlsbad CA 92018

Meadowbrook Homeowners Assoc
PO Box 60005
Newark NJ 07101-8052

THD/CBNA
PO Box 6497
Sioux Fall, SD 57117

Tupitza &Associates
212 West Gay Street West
Chester PA 19380

Verizon
PO Box 16806
Newark NJ 07101

Wells Fargo Home Mortgage
PO Box 10335
Des Moines IA 50306